CITY OF SIOUX CITY, Appellee, v. R. E. BETZ, Appellant.

No. 45892.

AUGUST 11, 1942.

Everett Waller and E. O. Bundy, both of Sioux City, and William P. Welch, of Logan, for appellant.

Virgil DeWitt and Ralph W. Crary, both of Sioux City, for appellee.

STIGER, J.—Appellee claimed title to real estate situated in Sioux City, Iowa, adjacent to the Missouri River, under a patent from the state of Iowa issued in 1938. Included in the grant is the following-described tract of land about 500x700 feet which is the land appellee seeks to recover from appellant:

Commencing at the mouth of the Perry Creek where it empties into the Missouri, thence in an easterly direction along the south side of the right of way of the Chicago, Milwaukee, St. Paul and Pacific Railway and the Chicago Northwestern Railway to the west line of Water Street, thence south in a straight line to the channel of the Missouri River, thence westerly along the bank of the Missouri River, to a point directly south of the east bank of the Perry Creek, thence north to the place of beginning.

Appellant claimed title by adverse possession and alleged that the patent "failed to show any basic title" and was invalid.

The controlling question is whether title to the land claimed by appellant was in the state of Iowa when the patent issued.

Appellant made the land claimed by him by dumping about 100,000 yards of dirt into the river from 1922 to about the year 1932. He built some bunkhouses on this tract for his employees, and stored thereon the machinery used in his grading business.

This tract of land, made by appellant as above stated, is situated below the high-water mark of the river, a navigable stream, and, as the state had title to the bed of the river from the high-water mark to the center of the river, title to the land in question passed to appellee under the patent.

Appellant did not prove the elements of adverse possession, and, furthermore, this defense was not available to him as against the state. Park Commissioners v. Taylor, 133 Iowa 453, 108 N. W. 927.

Appellant further claims he dumped the dirt on accretion land belonging to certain railroad companies and therefore the state did not acquire title to the land in controversy. Assuming this contention was made in the district court, no evidence was introduced by appellant to sustain it. In fact, the following evidence introduced by appellant refutes this claim and shows the dirt was dumped on the bed of the stream:

"Q. Now, Mr. Betz, as you dumped this dirt and rock in

there you dumped it into the water? A. It was probably 20 feet deep there, maybe 3 or 4 feet of water except in high water and, of course, it would naturally go down into the water. Q. Now, all of the land that you now occupy up there, prior to the time you commenced to dump there, was a part of the Missouri River channel? A. Yes. Yes, that is all there was, what we filled in through there. Q. Just tell us, Mr. Betz, what the condition of the water was as you made this fill, deep, shallow or what? A. What is that? Q. Deep water or shallow water? A. The river ran through in high water. Of course, in the Fall of the year the river was kind of pushing up. As we put the dirt in there it would still push the river out farther. Q. Now this land that you speak about, let's get clear on this, is that dirt and rock, material that you have hauled in there, or was this sand thrown up by the river? A. No, sir. The river don't throw up any of that except when we had a high water there is settlement, the water would settle there, probably six or eight years, a big rise like now you know it will probably leave maybe a foot of sediment there, but it is an overflow, just once in a while. Q. This area that you have described as being about a block and a half long and several hundred feet wide, that is ground that you built? A. Yes, sir. Q. Not built up by the river? A. Oh, no, no. You know when you put in eighty or a hundred thousand yards of dirt it is quite a fill of dirt. Q. Now, all of the land that you now occupy up there, prior to the time you commenced to dump there, was a part of the Missouri River Channel? A. Yes. Q. Have you ever received a deed from any person or corporation? A. No, I have never received a deed.''

A witness for appellant testified:

''Q. So that the dirt, the land that is there now, has been made by dumping dirt into the river? A. Every bit of it.''

However, if this tract was originally accretion land, the record does not satisfactorily show that the railroads were riparian owners. There is evidence that the river was adjacent to First and Second Streets in Sioux City and never reached the property of the railroads. Appellant does not purport to have been a riparian owner.

■ Another proposition submitted is that the land in question originated from an abandoned river channel and that chapter 448, Code 1939, entitled "Islands and Abandoned River Channels," provides an exclusive procedure for sale of an abandoned river channel by the state. There is no merit to this contention as the record is devoid of evidence that the land claimed by appellant rests on an abandoned river channel. As stated, the evidence shows the land was formed by dumping dirt into the channel of the river. See Coulthard v. McIntosh, 143 Iowa 389, 122 N. W. 233.

■ II. Appellee's brief and argument was filed April 20, 1942. The case was submitted June 17, 1942. On June 27, 1942, appellant, without an order of court, filed an amendment to his brief and argument making more specific the errors relied upon for reversal in his original brief and argument and submitting additional propositions. Appellee's motion to strike this amendment is sustained. See Cowles v. Joelson, 226 Iowa 1202, 286 N. W. 419.—Affirmed.

All JUSTICES concur.